UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLENNIS K. LANE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 2:22-cv-00058-JAW |
| | ) |
| CITY OF ROCKLAND et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

In this civil rights action stemming from her arrest in May 2020, Glennis K. Lane brings claims against a Rockland police officer, the City of Rockland, and two Rockland officials.[1] *See* First Amended Complaint (FAC) (ECF No. 45). The Defendants move to dismiss several—but not all—of Lane's claims for failing to state a claim. *See* Motion to Dismiss (MTD) (ECF No. 13). I conclude that Lane has failed to plead sufficient facts to support her civil rights claims based on municipal and supervisory liability and waived any opposition to the other portions of the Defendants' motion to dismiss. Accordingly, I recommend that the Court grant the motion with one minor exception.

**I. Background**

Lane's operative complaint contains the following allegations. On the evening of May 21, 2020, Lane went to an apartment complex in Rockland to visit her sons. *See* FAC ¶ 16. As she was pulling into the complex, she noticed her son's truck parked

---

[1] Lane also brings claims against four unnamed John and Jane Doe defendants, who are "police officers, supervisors, policy makers, and/or officials employed by the City of Rockland." FAC ¶¶ 12-13.

1

on a grassy area beside the road with a police car parked behind it. *See id.* ¶¶ 17-18. Lane parked her car in front of her son's truck and approached Rockland Police Officer Michael Rolerson, who was sitting in the police car. *See id.* ¶ 18. After she identified herself, Rolerson told her that her son had been arrested for operating without a license and taken to the Knox County Jail; he also informed her that a towing company had been summoned to remove her son's truck and impound it. *See id.* ¶ 19.

The Rockland Police Department (the "Department") has a policy that when a person is taken into custody he is to be given the option of locking his vehicle and leaving it where it is, requesting that the vehicle be towed by a company of his choice, or summoning a responsible person to come and get the vehicle.[2]  *See id.* ¶ 20. Knowing this and hoping to avoid the expense of having the truck towed, Lane informed Rolerson that she would move the truck to the apartment complex's parking area herself. *See id.* ¶ 21. Rolerson told Lane that she could not take the truck, but she continued to insist that she was "fine to drive" and could move "the truck to a parking spot." *Id.* ¶¶ 23-24. In violation of the Department's policy, Rolerson never attempted to verify that Lane was the mother of the truck's owner or that she "was safe to drive the vehicle"; nor did he make any "attempt to call off the towing company." *Id.* ¶¶ 22, 32.

When Lane stepped onto the truck's running board and attempted to enter the vehicle, Rolerson came up behind her and grabbed her by the arms; he then

---

[2] Lane alleges that these options were not presented to her son before he was taken to jail by another unnamed officer. *See* FAC ¶ 20.

proceeded, in violation of the Department's policies, to "batter" and "manhandle" her causing "multiple visual injuries and bruises." *Id.* ¶¶ 24-27. He put Lane in "excessively tightened" handcuffs that caused her great pain, placed her in his police car, and arrested her on charges of assault and refusing to submit to arrest. *Id.* ¶¶ 28-30. When Lane pleaded with him to remove or loosen the handcuffs to relieve her pain, Rolerson ignored her in violation of the Department's policy. *See id.* ¶¶ 34-35.

Rolerson took Lane to the Department, "where she was forced to remain in a room for four hours" while "in severe pain." *Id.* ¶ 38.[3] Contrary to the Department's policy, no medical attention was ever provided to Lane and no photos were ever taken of her obvious injuries, even though other unnamed officers "expressed some concern" about her injuries. *Id.* ¶¶ 39-41. Lane sought medical care for her "bruising and other injuries" the following day and had photos taken herself. *See id.* ¶¶ 42-43. No use of force report was filed as required by Department policy. *See id.* ¶ 44. Ultimately, the charges against Lane were dismissed for lack of evidence, but she and her son both had to pay $100 in towing fees. *See id.* ¶¶ 37, 44.

In March 2022, Lane filed a complaint against Rolerson, the City of Rockland, City Manager Thomas Luttrell, Chief of Police Christopher Young, and unnamed

---

[3] Lane's operative complaint is somewhat inconsistent about where she was taken after her arrest. At one point she says she was taken to the Department, but at another point she says that she was detained at the Knox County Jail. *Compare* FAC ¶ 38 ("Plaintiff was escorted to the Rockland Police Department where she was forced to remain in a room for four hours . . . ."), *with id.* ¶ 41 (alleging that she never received medical care while "detained at the Knox County jail"). The Defendants point out that the correctional staff at the Knox County Jail are not City employees or officials. *See* MTD Reply (ECF No. 28) at 7 n.3. I take the Defendants' point, but I will give Lane the benefit the doubt and assume, for purposes of evaluating the motion to dismiss, that all of the unnamed actors she describes in her complaint were City personnel.

John and Jane Doe Rockland employees or officials. *See* Complaint (ECF No. 1) ¶¶ 5-14. In addition to the allegations outlined above, Lane alleged that the City, Luttrell, and Young deprived her of her civil rights by neglecting "their responsibilities as policymakers due to their negligence in training, directing, disciplining, and ensuring compliance with [D]epartment policy on the part of . . . Rolerson in a timely manner to protect [her] from bodily injuries and emotional distress." *Id.* ¶ 51.

In April 2022, the Defendants filed the instant motion to dismiss. *See* MTD at 1. Lane filed her response in opposition to the motion to dismiss, along with an amended complaint, in July 2022. *See* MTD Opposition (ECF No. 24); Amended Complaint (ECF No. 23). That amended complaint was eventually stricken for being filed without leave, *see* Order (ECF No. 40), and Lane filed a motion seeking leave to amend her complaint, *see* Motion to Amend (MTA) (ECF No. 34).

The Defendants opposed Lane's proposed amendments, arguing that they were futile and did not remedy the shortcomings identified in their motion to dismiss. MTA Opposition (ECF No. 35).[4] Nevertheless, I granted Lane's motion to amend after concluding that it would be more efficient to address the Defendants' futility arguments in the context of the motion to dismiss. *See* Order (ECF No. 41). In doing so, I indicated that I would substitute Lane's "first amended complaint when making a recommended decision on the motion to dismiss" and also "consider the

---

[4] The Defendants did not oppose Lane's elimination of the abuse of process count contained in her original complaint. *See* MTA Opposition at 1. Accordingly, their argument that that count should be dismissed, *see* MTD at 8-9, is moot.

4

arguments the parties raised in their briefing on the motion to amend in combination with the arguments they raised in their briefing on the motion to dismiss." *Id.* I gave the parties the opportunity to notify me if they wished to submit supplemental briefing in light of my ruling, *see id.* at 2, but neither side did so.

As things stand now, Lane is asserting six counts: violation of civil rights (Count I), municipal liability (Count II), due process (Count III), false imprisonment (Count IV), damages (Count V), and punitive damages (Count VI). *See* FAC ¶¶ 46-63. And the Defendants are seeking the dismissal of (1) all claims against Luttrell and Young (Counts I-VI), (2) the civil rights claims (Counts I-III) against the City, and (3) the separate claims for damages and punitive damages (Counts V-VI). *See* MTD at 3-10.[5] They also separately seek the dismissal of Lane's "request for punitive damages" against the City, Luttrell, and Young. *See id.* at 10.

## II. Legal Standard

When assessing a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, courts must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010). Generally, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and need not set out "detailed factual allegations," *Bell Atl.*

---

[5] The Defendants do not seek the dismissal of Lane's false imprisonment claim against the City, which is brought under Maine law rather than federal law. Accordingly, the City will remain a party to this litigation even if the Court agrees with my recommendation to grant the Defendants' motion to dismiss. Similarly, the Defendants do not seek the dismissal of Lane's substantive claims against Rolerson.

5

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "But gauzy generalities will not suffice; a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011) (cleaned up). Accordingly, a "motion to dismiss may be granted if the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Seifer v. Gov't Emps. Ins. Co.*, No. 21-1371, 2022 WL 1538276, at *2 (1st Cir. May 13, 2022) (cleaned up).

### III. Discussion

#### A. Supervisory Liability

I begin with Lane's 42 U.S.C. § 1983 claims (Counts I-III) against Luttrell and Young.[6] In opposing the motion to dismiss, Lane makes clear that she is asserting supervisory liability claims against Luttrell and Young on the basis that they (1) engaged in a custom of ignoring police misconduct, and (2) failed to adequately train and supervise the officers involved in the incident underlying her complaint.[7] *See* MTD Opposition at 2-3, 5; MTA Reply (ECF No. 39) at 2. The Defendants argue that Lane has failed to allege sufficient factual matter to support her supervisory liability claims. *See* MTD at 5-7; MTD Reply at 3-7; MTA Opposition at 2-7.

Although "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*,"

---

[6] Lane's complaint does not make entirely clear which counts are against which defendants, so I will assume, as the Defendants did, *see* MTD at 10, that she is pressing all three of her federal civil rights claims (Counts I-III) against Luttrell and Young.

[7] Lane concedes that Luttrell and Young did not participate directly in any violation of her rights, and she "accepts" that there is not an official "policy that authorizes or encourages [Rockland] police officers" to violate the rights of citizens. MTD Opposition at 1.

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), supervisory officials may be liable for their "own acts or omissions," *Aponte Matos v. Toledo Dávila*, 135 F.3d 182, 192 (1st Cir. 1998) (cleaned up). Short of direct involvement—which is not alleged here—supervisors may held liable if they formulate a policy or engage in a custom that leads to the challenged occurrence, *see Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994), or if they fail to adequately train or supervise subordinates, *see Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999). Under any scenario, the supervisor's action or inaction must display "deliberate indifference toward the rights of third parties," *id.*, meaning that the supervisor "must have actual or constructive knowledge of a grave risk of harm posed by the subordinate and fail to take easily available measures to address the risk," *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (cleaned up). Beyond deliberate indifference, there must also be an affirmative link that connects the supervisor to the subordinate's violative act or omission. *See Maldonado-Denis*, 23 F.3d at 582.

To determine whether Lane's complaint states plausible claims of supervisory liability against Luttrell and Young, I must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In her now operative complaint, Lane alleges that Luttrell and Young are both policymakers responsible for promulgating "policies, procedures[,] and guidelines for employees of the Rockland Police Department" and for enforcing those rules and ensuring that Department personnel "obey the laws of the United States and the State of Maine." FAC ¶¶ 9-10. She further alleges,

7

>  Defendants Luttrell and Young jointly, severally, and in their supervisory capacity, due to their failure, upon information and belief, to train and supervise officers in the Rockland Police Department, created a deliberate indifference to discipline, training, etc. and color of law or policy which deprived [Lane] of her Fourth Amendment rights, and those rights, privileges, and immunities secured by the Fourth and Fifth Amendment to the Constitution as incorporated and applied to the States through the Fourteenth Amendment.  Had the above referred-to training, discipline and direction been present, these injuries and indignities on [Lane] would not have been  perpetrated by a well-trained and reasonable police officer.

*Id.* ¶ 47.

I agree with the Defendants that these allegations do little more than assert a legal conclusion about Luttrell and Young's involvement in the underlying constitutional violations.  *See* MTA Opposition at 4-5.  By simply parroting the standard for supervisory liability, Lane has made "precisely the type of 'the-defendant-unlawfully-harmed-me' allegation[s] that the Supreme Court has determined should not be given credence when standing alone."  *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Perhaps recognizing the barebones nature of her allegations regarding Luttrell and Young, Lane argues that the other allegations in her complaint give rise to commonsense inferences that make her supervisory liability claims plausible.  *See generally* MTD Opposition; MTA Reply.  She points out that her complaint implicates more than just one officer and contends that Rolerson and the other unnamed officers would not have acted the way they did unless "a custom had been established . . . empowering officers to ignore" with impunity Department policies "designed to preserve the civil rights of citizens."  MTD Opposition at 3.  She further

8

asserts that her allegations make it "clear" that Rolerson and the other officers were not adequately trained or supervised. *Id.* at 5. Based on these suggested inferences, she argues that Luttrell and Young "must be charged with constructive knowledge that either the custom or the failure to train presented a serious risk of harm to citizens." *Id.*

As the Defendants correctly point out, *see* MTA Opposition at 4-5, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference," *Maldonado-Denis*, 23 F.3d at 582. This is because the custom "must be so well settled and widespread that the" supervisory officials "can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

Likewise, a preexisting "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62, 64 (2011) (cleaned up).[8]

---

[8] The Supreme Court has not foreclosed a "rare" exception where "the unconstitutional consequences of failing to train could be so patently obvious" that liability could attach "without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. Lane does not argue that her allegations fall within this rare exception, *see generally* MTD Opposition; MTA Reply, and, in any event, her complaint fails to offer sufficient non-conclusory facts upon which to conclude that her injuries were the "patently obvious," "highly predictable" result of Luttrell's and Young's failure to train Rolerson and the other officers. *Connick*, 563 U.S. at 64 (cleaned up); *see Senna v. Ciccone*, No. 14-12849-DJC, 2015 WL 751166, at *9 (D. Mass. Feb. 23, 2015) (reaching a similar conclusion even when presented with more specific allegations about a city's inadequate training).

With that said, courts have sometimes inferred supervisory/municipal liability from a single instance of police misconduct involving multiple officers working in concert. *See McElroy v. City of Lowell*, 741 F. Supp. 2d 349, 354 & nn. 3-5 (D. Mass. 2010) (collecting cases). But they have only done so where "the conduct of the offending officers was so outrageous and the participation of many was so pervasive, that no other conclusion could be drawn" except that the behavior was the result of a custom or inadequate training. *Id.* at 355 (citing *Bordanaro*, 871 F.2d at 1156); *see, e.g.*, *Kibbe v. City of Springfield*, 777 F.2d 801, 802-05 (1st Cir. 1985) (holding that a single incident during which three police officers discharged their firearms and no officers informed medical personnel that the suspect had been shot was sufficient to infer a custom from just that incident); *Cohen v. City of Portland*, No. 2:21-cv-00267-NT, 2022 WL 1406204, at *6 (D. Me. May 4, 2022) (holding that a plaintiff's allegation that nine police officers and fire rescue personnel watched his son—who had been chased by police into frigid ocean water during a mental health crisis—drown without intervening was sufficient to infer inadequate training from just that single incident).

Here, Lane has fallen well short of alleging sufficient facts to infer from just her isolated experience that Luttrell and Young were on notice of a widespread and well-settled improper custom or inadequate training and supervision. Although Lane alleges that multiple officers violated Department policies and her constitutional rights, her allegations do not support the inference that officers did so as part of a concerted action. Moreover, although Lane's allegations against Rolerson and the

10

other officers are serious, they do not suggest a pattern of misconduct so shocking or egregious "as to allow an inference of supervisory encouragement, condonation, or even acquiescence." *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985); *cf. Kibbe*, 777 F.2d at 802-05; *Cohen*, 2022 WL 1406204, at *6.

Lane complains that she is being held to an unfair standard because "without discovery" she cannot know what Luttrell and Young knew about customs and training or "what they did, did not do, or should have done." MTD Opposition at 6. But the "absence of discovery is no excuse for" failing to allege sufficient facts to raise her right to relief above the speculative level. *Stewart v. Fleming*, 838 F. Supp. 2d 1, 3 (D. Me. 2012). Indeed, as *Twombly* and *Iqbal* make clear, alleging sufficient facts is what unlocks the doors to discovery and enables a plaintiff's claims to survive a motion to dismiss. *See Twombly*, 550 U.S. at 556-57 ("Asking for plausible grounds to infer [illegal conduct] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. . . . The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [illegal conduct] reflects the threshold requirement of Rule 8(a)(2) that the plain statement possess enough heft to show that the pleader is entitled to relief." (cleaned up)); *Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

The First Circuit has indicated that "some latitude may be appropriate in applying the plausibility standard" in cases where "a material part of the information needed is likely to be within the defendant's control" and it would be "reasonable to expect that modest discovery may provide the missing link." *Saldivar*, 818 F.3d at 23 (cleaned up). Lane identifies broad discovery that she believes will help her prove her claims against Luttrell and Young, *see* MTD Opposition at 2, 6; MTA Reply at 2, but she does not acknowledge the First Circuit's applicable standard, let alone identify any missing links in her complaint that could be filled in with narrow discovery. And given the wide gap between Lane's conclusory allegations against Luttrell and Young and what would be sufficient to show plausible supervisory liability claims, there is little reason to believe that limited discovery would fill in all the missing pieces. *See Saldivar*, 818 F.3d at 23 (noting that the cases in which latitude has been given involve missing links that have been "alleged upon information and belief" or are plausible "simply by appeal to common sense" (cleaned up)); *Stewart*, 838 F. Supp. 2d at 3-4 (dismissing a plaintiff's supervisory liability claims against a police chief where she made only conclusory allegations and rejecting the plaintiff's argument that she could not state a plausible claim without discovery); *Twombly*, 550 U.S. at 555 (noting that the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged illegal conduct).

At bottom, Lane's supervisory claims against Luttrell and Young are "too speculative to survive a motion to dismiss." *Saldivar*, 818 F.3d at 22. She has simply

failed to allege sufficient facts to show that Luttrell and Young were deliberately indifferent or that their acts or omissions were affirmatively linked to the constitutional violations of their subordinates. In such circumstances, she has not "nudged" her supervisory liability claims "across the line from conceivable to plausible" and the claims "must be dismissed." *Twombly*, 550 U.S. at 570.

### B. Municipal Liability

Lane's claims for municipal liability under Section 1983 (Counts I-III) are premised on the same custom and failure to train/supervise allegations as her supervisory liability claims against Luttrell and Young, *see* FAC ¶¶ 46-56, and, therefore, they should be dismissed for the same reasons outlined above, *see, e.g.*, *Saldivar*, 818 F.3d at 20 (upholding the dismissal of Section 1983 claims against a municipality where the plaintiff failed to plausibly allege that a police chief had been deliberately indifferent when acting as a final policymaker for the municipality); *Lopera v. Town of Coventry*, 652 F. Supp. 2d 203, 220 (D.R.I. 2009) ("Plaintiffs' claim for municipal liability is based on a failure to train and fails for the same reasons their claims for supervisory liability fail.").

### C. Other Claims Raised in the Motion to Dismiss

In their motion to dismiss, the Defendants also seek the dismissal of Lane's other claim against Luttrell and Young for false imprisonment (Counts IV) as well as her separate claims for damages and punitive damages (Counts V-VI). *See* MTD at 10. Lane has not addressed these counts in her opposition to the motion to dismiss or in her briefing on the motion to amend. *See generally* MTD Opposition; MTA;

13

MTA Reply. Accordingly, Lane has waived any opposition to the dismissal of those claims and they should be dismissed. *See Perkins v. City of Attleboro*, 969 F. Supp. 158, 177 (D. Mass. 2013).

Each substantive count in Lane's complaint contains a general prayer for damages, so the dismissal of her separate "claims" for damages and punitive damages would nevertheless leave those prayers intact. *See* FAC ¶¶ 46-58; *cf. Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 13-14 (D. Me. 2005) (dismissing a plaintiff's separate claim for punitive damages on the basis that such damages are a remedy not an independent cause of action, but noting that the plaintiff could still "pursue a punitive damages remedy against" the defendant if she made "the proper showing at trial"); *Connors v. Town of Brunswick*, No. 99-331-P-C, 2000 WL 1175641, at *11 & n.18 (D. Me. Aug. 16, 2000) (rec. dec.) (noting that the prayers for relief contained in each of the plaintiff's substantive counts remained intact even after granting summary judgment in favor of the defendants on the plaintiff's separate claim for punitive damages), *aff'd*, ECF No. 62 (D. Me. Oct. 16, 2000); *AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 13-13046-DJC, 2014 WL 4656608, at *11 & n.4 (D. Mass. Sept. 12, 2014) (dismissing a plaintiff's separate claim for punitive damages because "damages are a remedy . . . not a cause of action" but noting that the plaintiff could still argue for punitive damages later on if there was a finding of liability).

The Defendants separately argue that Lane's "request for punitive damages" against the City should be dismissed on the basis that such damages are not

14

recoverable under the applicable law.[9]  *See* MTD at 10.  Although Lane has not addressed this argument either, I recommend that the Court exercise its discretion and decline to resolve whether punitive damages are recoverable against the City at this stage in the proceedings.  *See D'Pergo Custom Guitars, Inc., v. Sweetwater Sound, Inc.*, No. 17-cv-747-LM, 2018 WL 6519070, at *6 (D.N.H. Dec. 11, 2018) (declining to dismiss a plaintiff's "request for punitive damages" because "whether punitive damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion" (cleaned up)); *Bernard v. Town of Lebanon*, No. 2:16-cv-00042-JAW, 2017 WL 1232406, at *6 n.3 (D. Me. Apr. 3, 2017) (declining to resolve the availability of punitive damages on a motion to dismiss because "the issue may not be amenable to resolution by a motion to dismiss").

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT IN PART** and **DENY IN PART** the Defendants' motion to dismiss.  Specifically, I recommend that the Court **DISMISS** (1) all claims against Luttrell and Young (Counts I-VI), (2) the civil rights claims against the City (Counts I-III), and (3) the separate claims for damages and punitive damages as to all remaining defendants (Counts V-VI) but

---

[9] The Defendants also seek the dismissal of Lane's request for punitive damages against Luttrell and Young.  *See* MTD at 10; MTD Reply at 1-2.  It is axiomatic that, if the Court accepts my recommendation to dismiss all claims against Luttrell and Young, Lane would not be able to recover any damages from them.

**DECLINE** to determine the availability of punitive damages against the City at this stage in the proceedings.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: January 31, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge