UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| GLENNIS K. LANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00058-SDN |
| | ) | |
| CITY OF ROCKLAND and | ) | |
| MICHAEL A. ROLERSON, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

After succeeding on a partial motion to dismiss and having now completed discovery, the City of Rockland and former Rockland Police Officer Michael A. Rolerson move for summary judgment on Glennis K. Lane's remaining claims against them relating to her arrest in May 2020. *See* Motion (ECF No. 73). For the following reasons, I grant Rolerson and the City's motion.

**I. Undisputed Facts**

The following undisputed facts come from the City and Rolerson's statement of material facts. *See* Defendants' Statement of Material Facts (ECF No. 74). Lane submitted a responsive statement of material facts, *see* Responsive Statement of Material Facts (RSMF) (ECF No. 78), but she did not submit her own statement of additional facts. Thus, although I have considered her denials and qualifications, I do not consider the facts alleged only in those responses or the many additional facts she improperly attempts to introduce in her opposition to summary judgment. *See* Local Rule 56(f) ("The court shall have no independent duty to search or consider any part of the record not specifically

1

referenced in the parties' separate statement of facts."); *Goldenson v. Steffens*, No. 2:10-cv-00440-JAW, 2014 WL 12788001, at *2 n.3 (D. Me. Mar. 7, 2014) ("A qualified response is not an appropriate vehicle for introducing new facts. Rather the qualification should offer record citations that show that the statement must be modified in some way to be accurate—or explain why such citations are not available. The proper place for additional contextual facts, if necessary for the summary judgment decision, is in the Statement of Additional Material Facts [as set forth in Local Rule 56(c)]."); *Zurich Ins. Co. v. Sunday River Skiway Corp.*, No. 08-325-P-H, 2010 WL 1511495, at *6 (D. Me. Apr. 15, 2010) (rec. dec.) ("[F]acts on which the party opposing a motion for summary judgment relies must be presented in that party's own statement of material facts, not merely in the responses to the moving party's statement of material facts, to which the moving party has no opportunity to respond."), *aff'd*, ECF No. 66 (D. Me. May 28, 2010).

On May 21, 2020, Rockland Police Sergeant Scott A. Redmun II stopped a pickup truck operated by Robert Jackomino in Rockland. RSMF ¶¶ 1-2.[1] The stop occurred on the driveway of Fieldcrest Apartments, which is used by the general public to access the apartment complex. *Id.* ¶¶ 2-3.[2] Redmun had reason to believe Jackomino's license had been suspended for operating under the influence; after confirming Jackomino's license was in fact suspended and he was subject to bail conditions prohibiting criminal conduct, Redmun arrested Jackomino. *Id.* ¶¶ 1, 4-5.

Jackomino did not request that his truck be locked and left where it was, nor was

---

[1] Because Lane's responsive statement of material fact incorporates Rolerson and the City's statements of material fact, I will cite to that document for ease of reference.
[2] Lane purports to deny this characterization of the driveway on the basis that it improperly calls for a legal conclusion. *See* RSMF ¶ 3. I disagree. How the driveway is used is a question of fact not law. Because Lane offers no evidence to controvert this fact and it is supported by the record, *see* ECF No. 72-1 at 13:24-14:9; ECF No. 72-2 at 37:9-17, it is deemed admitted, *see* Local Rule 56(f).

a friend or family member present on scene to take his keys and move the truck. *Id.* ¶¶ 8-9. Redmun therefore requested a towing company come to the scene and remove the truck. *Id.* ¶ 5. Before Redmun left the scene with Jackomino, Rolerson arrived. *Id.* ¶ 11. Redmun ordered Rolerson to stay at the scene until Jackomino's truck had been towed. *Id.* ¶ 12.

After Redmun left with Jackomino, Lane arrived at the scene. *Id.* ¶ 15. Lane approached Rolerson, whom she understood was a police officer, and identified herself as Jackomino's mother. *Id.* ¶¶ 16-18. When Rolerson informed her of Jackomino's arrest, Lane told him she would take the truck. *Id.* ¶¶ 18-19. Rolerson advised Lane a towing company had been called and she could not take the truck. *Id.* ¶ 19. Lane nevertheless moved toward the truck. *Id.* ¶ 20. Rolerson prevented Lane from entering the truck. *Id.* ¶ 22. Lane pushed and struck Rolerson. *Id.* ¶¶ 22-23. Rolerson caught Lane's arm and maneuvered her arms behind her and advised her he was placing her under arrest. *Id.* ¶¶ 24-25. Lane attempted to strike Rolerson again and pulled away from him making it difficult for him to place her in handcuffs. *Id.* ¶¶ 26-27. Eventually, Rolerson placed handcuffs on Lane with her arms behind her back and her palms facing outward in accordance with Rockland Police Department policy. *Id.* ¶¶ 28-29, 37. Rolerson checked to make sure he could fit a finger between the handcuffs and Lane's wrists and that the handcuffs were double locked. *Id.* ¶ 30.[3]

Rolerson contacted Redmun for assistance. *Id.* ¶ 32. When Redmun returned to the scene, he observed a woman with her hands handcuffed behind her. *Id.* ¶ 33. Redmun checked the handcuffs and confirmed they had been applied correctly and were double

---

[3] Lane purports to deny this fact, but she points only to her own deposition testimony that she does not recall *Redmun* checking her handcuffs. *See* RSMF ¶ 30; ECF No. 72-1 at 30:3-20. Such testimony does not controvert Rolerson's declaration that he checked Lane's handcuffs himself. *See* ECF No. 72-4 ¶ 17. Accordingly, this fact is deemed admitted. *See* Local Rule 56(f).

locked. *Id.* ¶ 34.[4]

Thereafter, Rolerson put Lane in his cruiser and transported her to the Knox County Jail. *Id.* ¶ 38. Once she was in the cruiser, Lane began to cry; she told Rolerson the handcuffs hurt and asked him to loosen them. *Id.* ¶ 39. Rolerson told her they were not far from the jail. *Id.* ¶ 40. The trip from the scene of the arrest to the jail took about five minutes, and Lane's handcuffs were removed within five minutes of arriving at the jail. *Id.* ¶¶ 41-42. At no point after her arrest did Lane request medical assistance from Rolerson or jail staff. *Id.* ¶¶ 43-44.

Rolerson charged Lane with disorderly conduct and refusing to submit to arrest. *Id.* ¶ 46. The prosecutor eventually dismissed the charges for insufficient evidence. *See* ECF No. 77-1.

## II. Procedural History

Lane filed a complaint against the City of Rockland, City Manager Thomas Luttrell, Chief of Police Christopher Young, and Rolerson in March 2022. *See* Complaint (ECF No. 1). Lane later amended her complaint. *See* First Amended Complaint (ECF No. 45).[5] The Court granted the Defendants' motion to dismiss Lane's claims against Luttrell and Young, her civil rights claims against the City, and her separate "claims" for damages and punitive damages against the City and Rolerson, which left only her civil rights claims

---

[4] Lane's denial of this fact based on her testimony that she does not recall Redmun checking her handcuffs is not enough to demonstrate a genuine dispute of fact. *See* RSMF ¶¶ 30, 34-35; ECF No. 72-1 at 30:3-20; ECF No. 72-5 ¶¶ 15-16; ECF No. 72-4 ¶ 19; *I.V. Servs. of Am. v. Inn Dev. & Mgmt. Inc.*, 182 F.3d 51, 55 (1st Cir. 1999) (holding a "mere lack of recollection does not suffice to create an issue of fact").

[5] In her complaint, Lane also names as defendants "John and Jane Doe 1 through 4," who are unidentified "police officers, supervisors, policy makers, and/or officials employed by the City of Rockland." First Amended Complaint ¶¶ 12-13. Even post-discovery, however, Lane has made no effort to identify or serve these individuals, so her claims against them are hereby dismissed without prejudice. *See Figueroa v. Rivera*, 147 F.3d 77, 82-83 (1st Cir. 1998) (affirming a district court's dismissal without prejudice of Doe defendants when the plaintiff had made no attempt to serve or identify them and a motion for summary judgment was ripe for resolution).

against Rolerson and her state law false imprisonment claim against Rolerson and the City. *See Lane v. City of Rockland*, No. 2:22-cv-00058-JAW, 2023 WL 1319566 (D. Me. Jan. 31, 2023) (rec. dec.), *aff'd*, 2023 WL 2326247 (D. Me. Mar. 2, 2023). After the close of discovery in February 2024, Rolerson and the City filed the instant motion for summary judgment on Lane's remaining claims.[6] *See* Motion.

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are material when they have the potential to affect the outcome of the suit under the applicable law. A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017) (cleaned up). "The party opposing summary judgment bears the burden of producing facts sufficient to deflect the swing of the summary judgment scythe," but the court must construe the record "in the light most favorable to the" opposing party and resolve "all reasonable inferences in that party's favor." *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 87 (1st Cir. 2020) (cleaned up).

### IV. Discussion

I note at the outset of my analysis that Lane explicitly concedes summary judgment should be granted for the City and Rolerson on her "false imprisonment count as with [her] other state claims." Opposition (ECF No. 79) at 13. Lane also did not respond to

---

[6] Rolerson and the City seek summary judgment on the issue of punitive damages. *See* Motion at 19. Because I am granting summary judgment in their favor on all of Lane's remaining claims, Lane will not be able to recover any damages from them, punitive or otherwise.

Rolerson's argument that, to the extent she continues to press a due process claim against him under the Fifth and Fourteenth Amendments, that claim fails. *See* Motion at 10-11. I nevertheless have reviewed the record and am satisfied Rolerson is entitled to summary judgment on Lane's due process claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of" due process, controls claims relating to an arrest.); *see also Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015) ("[The plaintiff] is correct in asserting the constitutional requirement for probable cause before he could be arrested or charged. But this right is protected by the Fourth Amendment, not by the Fifth or the Fourteenth Amendments[] . . . ." (cleaned up)).

As such, only Lane's Fourth Amendment claims against Rolerson for arresting her without probable cause and using excessive force during that arrest remain.[7] *See* First Amended Complaint ¶¶ 48-49; 42 U.S.C. § 1983; U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . .").

## A. Probable Cause

"Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had

---

[7] Lane also briefly alludes to Article 1, Section 5 of the Maine Constitution in her complaint. *See* First Amended Complaint ¶ 1. To the extent this passing mention is enough to invoke the Maine Constitution, my analysis is unchanged "because the protections of Article 1, [Section] 5 of the Maine Constitution are coextensive with those of the Fourth Amendment." *Fagre v. Parks*, 985 F.3d 16, 21 (1st Cir. 2021) (citing *State v. Martin*, 2015 ME 91, ¶ 17 n.2, 120 A.3d 113). In other words, because Rolerson is entitled to summary judgment on Lane's Fourth Amendment claims, he necessarily is entitled to summary judgment on any Article 1, Section 5 claims.

6

reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

As previously noted, Rolerson arrested Lane for disorderly conduct and refusing to submit to arrest. Under Maine law, a "person is guilty of disorderly conduct if . . . [i]n a public place, the person intentionally or recklessly causes annoyance to others by intentionally . . . [e]ngaging in fighting, without being licensed or privileged to do so." 17-A M.R.S.A. § 501-A(1)(A)(3) (Westlaw Mar. 21, 2025); *see also id.* § 501-A(2)(A) ("'Public place' means a place to which the public at large or a substantial group has access . . . ."). And a "person is guilty of refusing to submit to arrest or detention" under Maine law "if, with the intent to hinder, delay or prevent a law enforcement officer from effecting the arrest or detention of that person, the person . . . [u]ses physical force against the law enforcement officer . . . ." *Id.* § 751-B(1)(B) (Westlaw Mar. 21, 2025).

As Rolerson highlights, *see* Motion at 6, the undisputed facts show Lane pushed and struck him in a public place when he prevented her from entering her son's truck and she then attempted to hit him again and pull away when he tried to put her in handcuffs, RSMF ¶¶ 3, 23-27. Knowledge of these facts and circumstances at the time Lane's arrest was enough for a prudent person to believe Lane had committed or was committing the crime of disorderly conduct and, subsequently, the crime of refusing to submit to arrest. Accordingly, probable cause supported Rolerson's arrest of Lane.

Instead of disputing the existence of probable cause to arrest her for disorderly conduct and refusing to submit to arrest, Lane makes a disjointed argument that Rolerson lacked probable cause to arrest her because it was "perfectly legal" for her to take her son's truck. Opposition at 6. For her authority for this position, Lane points to the Rockland

7

Police Department's standard operating procedure for what should be done with a vehicle when its owner is taken into custody. *Id.* at 7-8.

Lane's argument on this point relies heavily on facts not properly before me. But even setting that issue aside and assuming for the sake of argument that the standard operating procedure somehow delineated what was and was not lawful, the procedure in question merely provides that when a suspect is taken into custody, "[*t*]*he suspect* may," as alternative to having his vehicle towed, "turn the keys over *to a relative on scene*, who will move the vehicle." ECF No. 72-18 at 2 (emphasis added). Given that Lane was not on scene when her son was arrested and he therefore could not have turned his truck keys over to her, I am not convinced this procedure gave her an unqualified right to take her son's truck when she came upon it after the fact.

In any event, because the undisputed facts establish that Rolerson's arrest of Lane was supported by probable cause, and Lane's citation to the Rockland Police Department's standard operating procedure does not demonstrate otherwise, Rolerson is entitled to summary judgment on this claim.

### B. Excessive Force

In addition to her unsuccessful probable cause claim, Lane also claims Rolerson violated her Fourth Amendment rights by using "excessive force" when putting her in handcuffs and refusing to loosen the handcuffs when she complained of "excruciating pain." Opposition at 6.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. What constitutes a reasonable use of force "under the Fourth Amendment is not capable of

8

precise definition or mechanical application"; it depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (cleaned up). The ultimate question "is whether the officers' actions" were "objectively reasonable in light of the facts and circumstances confronting them"—reasonableness in this context "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396-97 (cleaned up).

Here, Rolerson arrested Lane for hitting, pushing, and attempting to pull away from him. *See* RSMF ¶¶ 23-27. Although another officer may have taken a different approach where Lane was eighty years old at the time of her arrest, had no weapon, and caused no immediate injury, *see* Opposition 6, 10, Lane's undisputed repeated physical conduct toward Rolerson and her attempt to resist arrest nonetheless made it objectively reasonable for him to restrain her in handcuffs, *see, e.g.*, *DiGennaro v. Town of Gates Police Dep't*, No. 07-CV-6426 CJS, 2013 WL 3097066, at *2, *13 (W.D.N.Y. June 18, 2013) (concluding that officers were entitled to use reasonable force when arresting and handcuffing an eighty-year-old suspect despite the suspect's "advance age and physical condition" where "those factors did not prevent him from mounting vigorous physical opposition to the officers").

Lane's claim that Rolerson applied her handcuffs too tightly does not save her excessive force claim. Lane has not properly controverted that Rolerson applied her handcuffs in accordance with Rockland Police Department policy, checked they were not too tight, and double locked them, or that Redmun also checked her handcuffs were properly applied and double locked. RSMF ¶¶ 29-30, 34. The undisputed facts further

9

show Lane was only in handcuffs for a brief period of time—minutes as opposed to hours—while she was transported to the Knox County Jail and that, although she claims to have experienced significant pain from the handcuffs, she never requested medical attention from Rolerson or anyone else. *Id.* ¶¶ 38-44.

The First Circuit has consistently held when a police officer handcuffs a suspect "in the customary manner and" keeps "her in handcuffs for no more than the time reasonably necessary to transport her to the lockup," there is "no legally sufficient basis for a finding that" the handcuffing "represented a constitutionally proscribed use of excessive force." *Calvi v. Knox Cnty.*, 470 F.3d 422, 425, 428 (1st Cir. 2006) (concluding a police officer did not use excessive force when he applied handcuffs to a suspect in accordance with standard police practice and the suspect was handcuffed for only fifteen minutes while being transported to lockup even where the suspect had a hand deformity and the officer observed her crying after handcuffing her); *Fernández-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 326-27 (1st Cir. 2015) (holding a police officer did not use excessive force when the officer shoved a suspect against a wall and handcuffed her—even though the suspect's crimes were minor and she presented no immediate threat to the officer—because there was "no evidence" that such a "technique deviated from standard police practice").

And although officers should do their best to ensure handcuffs are not hurting a suspect, a suspect's complaints of pain do not transform an otherwise reasonable use of handcuffs into a Fourth Amendment violation. *See, e.g., Ray v. Donovan*, No. 05-239-P-H, 2006 WL 3741914, at *18-20 (D. Me. Dec. 14, 2006) (rec. dec.) (applying *Calvi* and concluding a defendant police officer had not used excessive force in applying handcuffs to the plaintiff even where the officer ignored the plaintiff's persistent pleas

10

during the drive to jail that his handcuffs had been applied too tightly and were causing him pain), *aff'd*, ECF No. 73 (D. Me. Jan. 26, 2007); *cf. Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 WL 432357, at *9 (D.N.H. Feb. 3, 2010) ("Even assuming that [the plaintiff] did experience some shoulder pain, minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." (cleaned up)); *Rodriguez v. Farrell*, 294 F.3d 1276, 1278-79 (11th Cir. 2002) (finding no excessive force and noting an officer need not credit an arrestee's claims of pain, especially when the arrestee is in the process of being handcuffed).

The cases Lane cites in opposing summary judgment on her excessive force claim are distinguishable from the circumstances of this case and largely predate the First Circuit's decision in *Calvi*. *See* Opposition at 12-13; *Channing v. Town of South Kingstown*, No. 18-004 WES, 2021 WL 2533874, at *3-4 (D.R.I. June 21, 2021) (denying summary judgment on an excessive force claim where the plaintiff submitted evidence—such as lingering pain and numbness—that "could lead a reasonable jury [to] conclude that [the defendant police officer] deviated from standard handcuffing protocols, injuring [the plaintiff] in the process"); *Barber v. Guay*, 910 F. Supp. 790, 800-01 (D. Me. 1995) (denying summary judgment where a jury could have found the defendant police officer was unjustified in wrenching the plaintiff's arm and applying the handcuffs across the bottom of the plaintiff's thumb instead of his wrist, particularly where the plaintiff "posed no threat," and "didn't resist arrest, or attempt to flee"); *McPherson v. Auger*, 842 F. Supp. 25, 27-28, 30 (D. Me. 1994) (denying summary judgment where a jury could have found a defendant police officer who applied handcuffs to the plaintiff "in accordance with the standard operating procedures of the Sanford Police Department"

11

nevertheless applied the handcuffs too tightly because the plaintiff complained of pain and was crying and had to miss work for several days and seek medical treatment for her injuries); *Ricci v. City of Portland*, No. CV-97-432, 1999 WL 35298354, at *5-6 (Me. Super. Ct. Sept. 23, 1999) (denying summary judgment on a plaintiff's excessive force claim where the evidence could have supported that the defendant police officer applied handcuffs to the plaintiff too tightly and ignored the plaintiff's pleas, particularly when, at the time of arrest, the plaintiff posed no threat, did not resist arrest, and even held out his hands for the handcuffs).

Finally, Lane contends throughout her opposition that there were many things Rolerson might have done differently to avoid the unfortunate altercation that ultimately ensued between them. I don't disagree—it seems to me that cooler heads should have prevailed on both sides of the situation. But even if some of Rolerson's actions "may later seem unnecessary in the peace of a judge's chambers," I must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. For the reasons discussed above, the undisputed facts establish that Rolerson's actions were objectively reasonable considering the circumstances confronting him at the time of Lane's arrest. Accordingly, Rolerson is entitled to summary judgment on Lane's excessive force claim.

### C. Qualified Immunity

Even if Rolerson had arrested Lane without probable cause and used excessive force in doing so, Lane has not shown "the law was clearly established such that a reasonable officer in" Rolerson's shoes "would be on notice that his actions would violate the Fourth Amendment." *Mitchell v. Miller*, 790 F.3d 73, 78 (1st Cir. 2015). Her passing

acknowledgment of the qualified immunity standard in her opposition to summary judgment and her reference to the Rockland Police Department's standard operating procedure, *see* Opposition at 8-9, fall short of meeting her "heavy burden" "of demonstrating that the law was clearly established at the time of the alleged violation," *Mitchell*, 790 F.3d at 77 ("[A] police officer is protected from liability for civil damages under [section] 1983 unless it is shown that the officer violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." (cleaned up)). As such, even if Rolerson did violate Lane's Fourth Amendment rights, he is entitled to qualified immunity and summary judgment in his favor is further warranted on that alternative basis. *See, e.g.*, *Plourde v. Cejka*, 717 F. Supp. 3d 106, 132 (D. Me. 2024) (concluding qualified immunity posed "an insurmountable hurdle" for the plaintiff but declining "to engage in a" lengthy "qualified immunity analysis" after finding the plaintiff had failed to demonstrate a constitutional violation), *appeal docketed*, No. 24-1263 (1st Cir. Mar. 20, 2024).

## V. Conclusion

For the foregoing reasons, the City and Rolerson's motion for summary judgment on all remaining claims is **GRANTED**.

**SO ORDERED**.

Dated this 24th day of March, 2025.

/s/ Stacey D. Neumann
**U.S. DISTRICT JUDGE**

13